May it please the Court, my name is Alan Bravender with the United States Department of Justice, and I'm here on behalf of the United States, the United States Forest Service, and the other Federal Defendant. If you're, keep close to that mic, okay? Okay. Judge Pregerson can hear you. If I may, I'd like to reserve six minutes for rebuttal on these cross appeals. The United States appeals from an order of the District of Montana requiring the Forest Service to reinitiate Section 7 consultation under the Endangered Species Act with the Fish and Wildlife Service on what are known as the Lynx Amendments. The Lynx Amendments are a set of provisions for forest management that the Forest Service adopted to protect the lynx and to promote the recovery of the species. In 2007, the Forest Service made a final decision to amend the forest plans of several forests in the northern Rocky Mountains area to include the Lynx Amendments protections. When they did that, though, they didn't have, there had no critical habitat had been designated. Is that right? That's correct. In the forests. That's correct. So the — Was that unusual, by the way? It seems like that was kind of odd. Well, I think of what you're referring to is the fact that there was an interior political employee — Hold on. I'm not referring to that. It just seems like kind of strange that they would, you know, the lynx is — The lynx is designated as an endangered species, and then there's no critical habitat to go along with, you know, with the — There was a critical habitat designation. It just didn't include Forest Service lands. But that was pretty significant, correct? I think that is correct. Once the agency reconsidered its decision, it did designate critical habitat in national forests that are relevant here. So when they designated the critical habitat, why didn't they just do a reinitiation? I don't quite understand why they didn't. Well, that's a — first of all, that's a Fish and Wildlife Service determination. That's not a Forest Service determination. What is at issue here is the Forest Service's actions and — or inactions. And the Forest Service — Why didn't the Forest Service just go reconsult with Fish and Wildlife? Because it only has an obligation to consult when it takes affirmative agency action. And the Forest Service was taking no actions on the forest plans in forests where there had been a designation of critical habitat. To the extent the Forest Service takes any action that may affect a listed species, such as the links, it consults when it approves projects. And through those project consultations, the Fish and Wildlife Service takes a look at the impacts of its decisions on critical habitat. For instance, the plaintiffs identify several projects ongoing in critical habitat, the Bozeman Municipal Project and the East Boulder Project. And in the context of those consultations, the Fish and Wildlife Service had an opportunity to examine the impacts, not only of this project, but also all Forest Service projects, past and present, in addition to the cumulative impacts of state and federal actions. And did so not only at the context of the links analysis unit or the project level, but also on the level or scale of the critical habitat unit, which is what the plaintiffs would call the landscape scale. So the Forest Service is consulting and doing everything the plaintiffs are asking them to do through project level consultations. So is that a statutory requirement? So for each project approved, the Forest Service and Fish and Wildlife, they have to do this cumulative impacts analysis? That's right. It's, I think, a regulatory. A regulatory. The people, the agencies charged with protecting endangered species are concerned, as the plaintiffs are, with piecemeal destruction of property. So they. Wait a minute. Let's just take, for an example, one of these. The Bozeman Municipal Watershed Project, which I gather has to do with some clearing or. It is a fire hazard reduction project in the event a wildfire should break out. As I understand it, when I looked at that, at the biop for that project, they do go back and look at the links amendments, correct? Correct. So if you go back to the links amendment, there really is no. The links amendment, the broader plan, doesn't encompass any or account for critical habitat. Is that right? That's correct. And that's why the Fish and Wildlife Service and the Forest Service account for that at the project level, because they cannot tier to the biop. But they're measuring. They're looking at the Bozeman project, applying the standards from the broader, the broader landscape determination, correct? Well, the links amendments are protections for the links. So of course it's going to be relevant in any consultation whether or not the Forest Service is complying with the links amendments. And to the extent the links amendments are not sufficient. Let me put it directly. Do you think the links amendment might be a little bit stronger or have different protections or different concerns if they had considered the critical habitat? No. And let's be clear. In the consultation for the links amendments, the Fish and Wildlife Service and the Forest Service absolutely looked at habitat for the links. It was occupied habitat. And many of the same elements that are occupied, that make something occupied habitat, also are relevant to critical habitat, such as the denning habitat or snowshoe hare habitat or habitat connectivity. And the agency absolutely consulted on that as on the links amendment consultation. Now, to the extent the links amendments are not sufficient, that would reveal itself through a project consultation. And if the plaintiffs do not believe that the links amendments are sufficiently protective, they can bring that challenge in the context of a project, a challenge to a project consultation. So nothing is being missed here. Nothing is being missed as a result of the Forest Service consulting only through projects. So let's see. So your position is, is that they made a final decision back in when they adopted the links amendments and incorporated them into the forest plan, and that's it? Well, the trigger, the statutory trigger under the ESA for consultation is action. And as this Court has held several times, that's limited to affirmative agency actions. And the adoption of a forest plan is action. The amendment of a forest plan is action. The revision of a forest plan is action. But the mere existence of a forest plan is not action, as the Supreme Court held in Norton v. Southern Utah Wilderness Alliance, or what we call SUWA. Right. Right. SUWA was a NEPA challenge where the Supreme Court held that BLM did not have to supplement its NEPA analysis when it discovered significant new information regarding off-highway vehicle use because the agency's action ended when it adopted the plan. The Supreme Court noted that the agency would have to do new NEPA only to the extent it And so Norton rejected the notion from this Court's decision in Pacific Rivers Council 1994 that a forest plan constitutes an ongoing action that can trigger a duty to conduct environmental reviews. Let's just assume that I were to agree with you for a moment on that point. What about the regulation, 50 CFR 402.16, when it talks about certain, for example, if there's new information reveals effects? Right. Or D, that was B of that section, or if new species are listed. Why doesn't that impose an obligation? Because that is limited to only where the agency is taking action, and the agency is taking no action on its forest plans. So that regulation just doesn't help the plaintiffs. But they have discretion to take action on their forest plans, correct? They do. And this Court held in both Western Watersheds v. Mochico and in California Sport Fishing Alliance that the mere unexercised discretion to take action is not action under the ESA. This Court has already rejected that. Even though they have the discretion to change the forest plans at any time. That's right. It's your point that it's the government's position that they don't. But the fact that a new species has been designated as critical wouldn't require the Forest Service to take any action? No. It wouldn't have to consult on the plans. But to the extent it's taking any action, actual affirmative action, that's going to affect a list of species, then, yes, absolutely, the agency has to consult, as it did here when it approved the Bozeman Municipal Project, as well as the East Boulder Project and Cold Summit Projects. You had other arguments as well. I'm sorry, Your Honor? I said you had other arguments about why the district court erred. That's right. Plaintiffs also lack standing. They lack standing because they have failed to show that they are suffering from any concrete harm to their interest in seeing lynx in the wild that is caused by the Forest Service. So we're dealing with a procedural harm here, correct? They do allege that they are suffering a procedural injury, but as this Court and the Court of Appeals have said numerous times, procedural injury isn't sufficient to confer standing. You need an actual, on-the-ground, imminent concrete injury, which plaintiffs have not alleged in their standing declarations. Well, where do they go wrong in their, you know, their declarations are pretty carefully drawn. No. I would say they are not carefully drawn. They make vague and conclusory allegations with absolutely no specific facts or concrete evidence to support the notion that their interest in seeing lynx in the wild are being injured in any way by the Forest Service's action. Particularly since, to the extent the Forest Service is taking any action, the agency has consulted with the Fish and Wildlife Service, and the Fish and Wildlife Service has concluded that those actions are not likely to adversely affect lynx critical habitat or jeopardize the species. Plaintiffs don't even challenge those conclusions, which begs the question, then, how exactly are their interests in seeing lynx in the wild being harmed? So do you think that they would need to show that the approval of a particular project is causing the injury to them? Is that your view? Well, yes, because in the context of Forest Service decision-making, it is only through a project that the Forest Service causes actual Article III injuries. The on-the-ground injuries, such as the cutting of trees, the building of roads, the burning of brush, those only are approved through projects. And so they would have to identify how it is a project is causing some on-the-ground injury that is harming their interest in seeing lynx in the wild. For example, this is how the plaintiffs could have established standing. Yes, speak slower. And this is only one example. The lynx amendments... Did you hear me? Yes. I'm sorry, Your Honor. Speak slower and distinctly. Okay. This is not a race. The lynx amendments prohibit any action or more than 30 percent of any lynx analysis unit from being in an unsuitable condition. The plaintiffs could have alleged that that 30 percent standard is insufficient, that the best available science, if they have evidence to support it, shows that a 20 percent standard is necessary. Then they could say a Forest Service project, as a result of a Forest Service project, 25 percent of the lynx analysis unit will be rendered unsuitable and is diminishing our ability to see lynx in the wild. They do not allege anything even close to that. They just speculate that the lack of plan-level consultation is causing an injury to their interests, and that is insufficient. They instead allege that they are suffering a procedural injury or that they have standing to bring a procedural challenge to their programmatic lynx amendments. And first of all, this is not a procedural rights case. But setting that aside, alleging a procedural violation does not allow the plaintiffs to avoid a showing of injury in fact. Maybe you could address our decision in 2011 in Sierra Forest Legacy, because I guess I thought that was the one post-Summers decision that stood most in the way of the argument you're making to us now. Right. And that decision did not allow plaintiffs to have standing based on mere speculative injuries. That was addressing the redressability prong of the standing analysis. And the government's argument here is not at least primarily concerned with the redressability prong, but with the injury in fact prong. Plaintiffs just have not demonstrated that they are suffering any concrete or particularized harm. And with that, I'd like to reserve the remaining time for rebuttal. You have six minutes. Six minutes, 18 seconds. Good morning, and may it please the Court. Excuse me. My name is Matt Kinnehan, along with co-counsel John Meyer. We represent Cottonwood Environmental Law Center. And we are also cross-appellant, so I don't know if it's possible to save two minutes for rebuttal. No, it's not. I wasn't sure how it works. On the beginning with the merits of the case on the Endangered Species Act question, this Court in the 2012 en banc decision of Karuk Tribes stated, and I'd just like to quote it, first we ask whether a federal agency affirmatively authorized, funded, or carried out the underlying activity. Second, we determine whether the agency has some discretion to influence or change the activity for the protected species. And the answer to both questions here is yes. And there's no room, that was a 2012 en banc decision, and there's no room to argue that Norton v. SUA somehow implicitly overruled that court decision. And then as recently as the spring in the NRDC case that was. . . SUA obviously couldn't have implicitly overruled Karuk Tribe because Karuk Tribe didn't exist when SUA was decided. You're right, I'm sorry. Can't hear. Go ahead. I mean it couldn't implicitly overrule Pacific Rivers Council. So that law is good law, and it can't be deemed implicated by the Norton v. SUA case, which was a case over the National Environmental Policy Act. In this case, in NRDC v. Jewell, likewise, announced the standard similarly and said whether an agency must consult does not turn on the degree of discretion that the agency exercises, but on whether an agency has any discretion to act in a manner beneficial to a species. An agency lacks discretion only if another legal obligation makes it impossible for the agency to act. Maybe I can ask you to back up. You wanted to jump straight to the merits, but I'm bothered by the standing issue here. I mean I guess the first question I have for you is how do you respond to your opponent's argument that basically you could get everything you want at the project-specific level? In other words, as long as you could show injuries stemming from a particular project, and in connection with that maybe the cumulative analysis that the agency did, you could basically get all the relief you want. You can attack the higher level plan that's in place. Why shouldn't we require you to come forward with injuries stemming from a specific project and then go from there? Well, a couple of points on that. One is we did allege injury from specific projects. We didn't challenge those projects, but we showed three different projects implementing the amendment. And the plaintiffs discussed their use of specific areas on those project areas. And that's all that was required. So in the Summers case, it was not a problem that the plaintiffs there were challenging the regulation. The problem was the standing declarant said, oh, I used some areas on the Allegheny National Forest, but he never talked about any specific timber sales or specific areas. It was just too vague in talking about the Allegheny National Forest. If the problem there had been the plaintiffs were challenging the regulations without challenging the specific project, then presumably the court wouldn't have looked at the details of the declarations and instead would have said, well, you can't challenge regulations. Well, you can, but you just have to do it through your challenge to a specific project. I guess that's to help me with this if I'm misreading Summers. I guess I thought the court there said, look, you, the plaintiff, you did come forward with a challenge to a specific project, and through that you could have challenged the higher order. Was it a regulation there? But what happened was your injury with respect to that particular project, it got resolved. It was taken off the table. And we're not just going to let you challenge the higher level sort of plan document or regulation in the abstract. You've got to come forward with some specific harm that's stemming to you from a particular project. And I guess I would have thought that your plaintiffs are even in a worse position here because they didn't even come forward from the get-go with alleging that there was any harm to them in the Article 3 sense from a particular project that had been approved. Well, I would say, including Summers, and I want to get to the details of that a little more, but going back all the way to the toilet goods cases and extending up through Ohio Forestry case out of the Supreme Court and other cases, the courts have always said you can mount a facial challenge to a programmatic plan or regulation as long as you satisfy certain conditions. And that's a matter of rightness but also of standing. And what the courts have said, as long as you can show that you were impacted in a specific place by the regulations or the programmatic document, you can bring that challenge. And this Court's ---- But how could you be impacted absent of the approval of a particular project? Because that higher level plan, it doesn't authorize anything. It doesn't do anything. It's just the framework within which specific projects are going to be approved. So, I mean, from your standpoint, why couldn't you just come in, forget about the couple of particular projects you've alleged. If we credit your standing theory here, why did you have to even point to anything? Why couldn't you just come in and say, you know what, I have an interest in a particular area of the forest which has been designated critical habitat. I think it's not going to be adequately protected under the existing links amendments. I want to challenge it. I can't point to any particular project that's been approved yet, but I'm sure one's going to come along. Why wouldn't that be adequate under your theory? Well, the Court's ---- that's exactly what Summers said is not adequate. Because after that first timber sale had gone away, which was challenged on a number of grounds, it went away on other NEPA grounds, not the statute that ended up underlying that case there. You do have to allege injury in a certain place. But the Court ---- this Court has been clear over and over that you don't have to challenge the specifics. And, you know, we have the Sierra Forest legacy case. We have Citizens for Better Forestry, Earth Island Institute v. Ruthenbeck, and other cases. And the difference is, as long as the standing declarants say the regulation or programmatic document we're challenging is being implemented in the Boulder Fuels Project, that was one of the projects here, I use that exact area and I am harmed because my recreational enjoyment of that area will be lessened because the Forest Service has not done this programmatic reinitiation of consultation over the critical habitat rule, a critical habitat that exists on that site in which Congress has ruled is crucially important. But they have done a consultation with respect to that particular project, and you're not challenging that. That's what I don't understand. So why isn't that just the end of the game for you? Because no case has ever said simply because you could bring a site-specific challenge means you cannot bring a programmatic challenge to the regulation of the documents. I mean, Sierra ---- But, no, let me be clear. How have you ---- what injury could you possibly have suffered under the theory you just articulated if they, in fact, have done a consultation with respect to the critical habitat impact, and they say there isn't any, and you don't challenge that. So how can you possibly be injured by that particular project? Well, now we're getting into why a consultation or reinitiation of consultation on critical habitat is required in the first place instead of just saying, well, let's just do site-specific consultations. And I would say, first of all, this Court in Pacific Rivers Council at Note 12 said so. It said that site-specific consultations are not sufficient. Even when they take into account cumulative impacts, you have to have the consultation at the forest plan level. Second, as a logical matter, I think it makes no sense because there's no contention by the Forest Service that consultation in the first instance is not required for forest plans. They concede it is. The Endangered Species Act regulations say it's required. So there's no doubt that consultation at that plan level is required. And the reason is so you get this large landscape analysis. The biological opinion in 07 said that. The critical habitat rule, when it was issued, said that that's necessary. And then we have statements from the government's top LINCS researcher talking about harm that has occurred since that previous consultation. I hear you, and I agree with everything you said. But I guess what I'm stuck at is I guess I thought you had to have first be able to allege that there was some kind of Article III injury stemming from a specific project, right? And we've done that. Well. Three different projects. No. I guess I'm talking about the negative impact on critical habitat from that particular project. And if, as your opponent said, if you had some theory as to why that project's approval, you know, had been based on some higher order, you know, general principle that was, in fact, you know, funneling down and causing you an injury stemming from that particular project, then of course you can challenge the failure to do consultation at that higher level of generality. But you have to start with injury stemming from a particular project. And I guess that's where I'm having a hard time seeing how you get past the Article III barrier there. Well, there's no doubt that if the consultation goes back, and there very well could be, and this gets into regressibility, there very well could be reductions in the amount of logging that are going to occur. And, you know, the standing in Clarence talked a lot about wanting to see lynx, but they also talk about just not liking to hike in timbered forests that have gone through timber sales. So if that plan results in any amount of reduction in logging, the plaintiff's injuries will be satisfied. And I think it's, you know, as you indicated, Your Honor, the Sierra Forest legacy case is problematic. And unlike the government statements in the briefs, its statements as to ripeness and standing are not dictum, but they are firm holdings. At page 1179-80, the Court made a clear statement that plaintiffs could challenge a forest plan absent a challenge to an individual project. And at page 1179-02, regarding ripeness, the Court said a procedural challenge such as we bring here is absolutely ripe as long as you have some standing statements as to individual places. You don't need to challenge the individual project. And there's simply no room given Sierra Forest legacy for this Court to hold otherwise. So why is reconsultation required? Well, the Endangered Species Act regulations require it. As you indicated, that section 402.16 states that there must be a reinitiation of consultation any time an agency retains discretion over, and uses that word retain, over an action. And there's four different things, one of which is critical habitat is designated that is impacted by the decision. So we have no doubt that that second part is satisfied here. The question then becomes, as I stated under the Karuk Tribe and NRDC v. Jewell, the question becomes, is there any discretion by the agency to act? It is unlike the NEPA regulations construed in Norton v. Sewa, which all talked about past authorizations, and there's no discussion of the discretion question in the NEPA regulations as there was not in Norton v. Sewa. And that was the problem with the Tenth Circuit decision in Forest Guardians v. Forsgren, is that the word discretion wasn't even uttered once by the Court in that decision. And this Court has been clear, just as the ESA regs make clear, that it is discretion that's the crux of the matter. It's not just the 402.02 section you look at for action, because that describes the type of things that need to be consulted on and talks about specific projects and programmatic plans. But it does not address the temporal aspect of action, and for that you have to look at the reinitiation of consultation regulation, which talks about retaining discretion. And if it talks about retaining discretion, there could be no ‑‑ the only way an agency retains discretion is if it already made a decision and then you're wondering whether it retains discretion. So that's why the two cases where this Court has said reinitiation is not required, California sport fishing and the Matejko cases, in both cases they had already granted private licenses. So the California sport fishing was regarding a hydroelectric license, but a private right to that had already vested. In the Matejko, similarly, it was vested rights of way to divert water. So those had already vested. Say that again. It was vested rights of way to divert water in the Western Watersheds Project versus Matejko. So those had inerred to private parties already, and there was nothing the agency could do to take back that authorization. But, you know, ever since the Pacific Rivers case all the way up to Kuruk Tribe and NRDC v. Jewel and others, as long as there's some retaining of discretion, then reinitiation has to occur, and that cannot be affected by the Norton v. Sua case. Are you going to turn to your prosecutor? Yeah. I was, yes. Okay, good. So under this Court's precedence, there is no need to show irreparable harm, and the Court may not balance the equities. And there was a long line of cases that I could read to you, but the question then is, does the Supreme Court's decision in eBay or in Winter or in Monsanto change that? And I would say the answer is no, and the reason is because in the eBay case and the flexible lifeline case that the Court was discussing eBay, but the flexible lifeline pointed out that the eBay court cited the Patent Act's authorization to grant an injunction, quote, in accordance with the principles of equity. Now, we have no language like that here on the Endangered Species Act. In the flexible lifeline. But when you ask in this instance, though, when you're asking for an injunction under the ESA, you're asking the Court to exercise its equitable power. Well, to the extent an injunction is defined as an equitable remedy. It is. Yes. Right. Well, that's what I mean. What do you mean to the extent? It is an equitable remedy that's, you know, that it has certain limitations. But there's no doubt that Congress can remove that. And they did in one's respect, they did. When you balance the hardships, they tipped decidedly in favor of the species. But this Court. Ah, it doesn't. There's nothing yet. I mean, the first prong of irreparable harm and likelihood of success on the merits still exists. Well, likelihood of success certainly does. But this Court's precedents, you know, so we have the. Oh, but you have to ask whether or not those are precedents. You keep pointing. I mean, I guess the biggest one is, is it Thomas v. Peterson? Peterson, that one?  I mean, that's where it all kind of really starts. Yes. Whether that still is good law in light of Winner and Monsanto. Well, that's why I think, you know, we need to look at those cases. So the eBay decision was based on the fact that the Patent Act specifically said, in accordance with the principles of equity. The Winter case dealt with NEPA where it was, there was some issue about whether  the plaintiffs weren't even alleging that they didn't have to show any harm. And it really came down to a probability question there, whether you had to show more likely than not that there would be harm, not whether the language of NEPA required a showing of harm. May I ask? Yes, Your Honor. First, I'd like to ask you, have we ever gotten to such a big mess? But I won't ask you to do that. Why don't you just tell me in about two minutes where the shining path is to help you get to where you want to go. Yes, Judge Pregerson. Well, the shining path on the merits is that the Forest Service has to enter into this reinitiation of consultation because the previous one was meaningless as to critical habitat. The only reason there was no critical habitat designated on the National Forest was because of this political interference by a high-ranking official. So if it's ever required, if consultation is ever required for a programmatic document and there's no dispute that it is required, then it must be required in a situation of reinitiation of consultation where you have this magnitude of change. Now, the Sierra Club v. Marsh case said not every little change is going to require reinitiation of consultation, and that's true. But here we had 12 million acres of critical habitat designated after the fact, and there was none designated at the time of the first consultation. So I think on the merits, that provides a clear path for this Court ruling in favor of the plaintiff. On the question of the injunction, I think it's a simple matter of this Court following its precedence on the Endangered Species Act. What is it that you want in joint? I didn't quite understand. Well, there's about 31 projects, that was a list that the Forest Service gave us, of timber projects that may affect the critical habitat for the lynx. And they said it would take about six months to do this consultation. So all we are really asking for is what happened originally when the Forest Service agreed to hold off on logging projects under a somewhat different standard, the likely to adversely affect standard. But still, they already for five years had hold off on logging projects while they developed this lynx amendment, because they realized they needed something for their forest plans to allow logging to go forward in lynx habitat. And it was easier to do the amendment and apply it to 11 national forests than it was to do 11 separate ones. Let me ask you this. When could a violation of Section 7 of the Endangered Species Act be remedied with damages? Judge Ferguson, we didn't quite catch the last part of your question. Well, I'll try to speak louder. Here's my question. When could a violation of Section 7 of the Endangered Species Act be remedied by damages, by a damage award? Your Honor, I don't think a Section 7 violation could ever produce damages. I know a Section 9 suit against a private entity for an unauthorized take could result in damages, or at least penalties to the government. But I don't think there's any monetary damages for Section 7. Well, but isn't there always irreparable harm? There is. And that is the point that this Court's precedents have stated multiple times that it is presumed to be irreparable harm from a procedural violation of Section 7 because of the importance of the Endangered Species Act. And you don't know what, it's up to the Fish and Wildlife Service ultimately to decide what harms are occurring as a result of that violation. Let me ask you this. I thought there was, so when there is an obligation to consult or. . . Speak a little louder, please. When there is an obligation to consult under Section 7. Yeah. I thought the, that the, here the Forest Service had to hold off pending the consultation. Yes, and that's why we've asked for the injunction pending. . . So why, why is there a need for an injunction when, you know, it's not like as if the road is ready to be built like in, like in the Peterson case. There was a road that was ready to go. Well, it's a. . . They wanted to enjoin a specific. . . They wanted to enjoin any investment or expenditure of resources into the construction of that road. Repeat that, please. In Peterson, they wanted to stop a particular road. Yeah.  So here, I mean, everything is kind of like it's, there's this plan maybe to have these separate projects, but nothing seems to be imminent. Well, the projects, especially the one that wasn't enjoined in the other suit, is going forward, so that the problem is you don't want to have the damage occurring while it's going on. Plus, I would add. . . Yes. And the problem is any individual project might not necessarily adversely modify under its definition critical habitat, but it's when you take them all as a whole and you reduce the habitat throughout the links' range that you come into the irreparable harm. And which we did, you know, our primary argument was that we didn't need to show it, but we also did show that there is harm in this case through that, you know, on all these projects, you are destroying critical habitat piece by piece, and that is what the critical habitat provision of the endangered species. So do all of these projects involve removing, you know, I guess, forest. . . Yeah, it's logging and forest thinning. Logging. And so it's those taken as a whole. That's why we can't come in and say this one project is going to necessarily ruin critical habitat for the links. But what we can say, because the Fish and Wildlife Service said it in its critical habitat rule, the 07BO, and we have the links scientists saying it even more recently, is that links are in danger because there is no level, planned level protections in place for critical habitat. But your injunction requested only is to enjoin projects that may endanger? That may affect. That may affect. Under the Endangered Species Act. And so, you know, how it would work would be if our injunction requests were granted, the district, those projects could be enjoined until reinitiation is started, which I will say the service never started even before months later it filed a stay request with this court, which is another reason that an injunction gets things going. But if you go to the district. . . Repeat what you just said, would you? Yeah. Judge Pregerson, what I said was that another reason for an injunction is that it actually gets the agency to act on the reinitiation of consultation. Without the injunction, there's no incentive for them to ever get it done. And that's exactly what happened here. The district court issued its order last May. Nothing happened. Nothing happened. And I think after the briefs were filed in this case, or during, the government filed a stay motion and finally got one. But it didn't act long before it ever filed a motion for stay. So. . . But how an injunction could work in this case would be if the district court. . . It's remanded to the district court. An injunction goes in place until they initiate consultation. Let's assume they initiate right away. Then we're in consultation, and a different provision of the Act, Section 7D, comes into place, which prevents irretrievable commitments of resources. And the district court could sort out exactly whether those 31 projects are making those commitment of resources, or it could work with the plaintiffs, as we've often been willing to offer, to work with them on releasing projects that we didn't think were causing much of a problem. So it would allow the district court at that stage, after reinitiation of consultation, to enjoy more discretion in what can go forward. But while the service is out of compliance, hasn't even reinitiated consultation, that's why we request an injunction of those projects that may affect. So the service has no incentive to deal with fish and wildlife and consult with them unless they're in a hard spot. Yes, Your Honor. We think that's correct. You know, given the nature of the alleged harm, it doesn't seem like it would take much to show irreparable injury. Well, I think, you know, in addition to... Even under the winner's test and everything else. Well, we certainly show, and there's, for standing purposes, we showed injuries. So then the question is, have we shown it sufficiently for an injunction above and beyond standing? And we do argue in our brief that we have, you know, in addition to it not being required, we have shown it. But the only way to really show it, you know, the Laid Law case, the Friends of Earth v. Laid Law, rejected the idea that, you know, you have to prove with scientific certainty that, you know, the link standards are going to drop below X percent or whatever it is. It's enough to show, as a plaintiff, that there is some harm occurring and when harm is required to be shown. And we showed that from the various statements of the Fish and Wildlife Service, which I think is probably a stronger showing than it would be, you know, a plaintiff's hiring some scientist who can come in and say, here's why. I think it's the most credible to look at the agency's own statements. Did you argue in the district court that there was you had made a sufficient showing of harm, apart from just arguing that our case law allows a presumption of irreparable harm? I believe so. I would have to go back and look again at the documents. But I do think that was argued below. Okay. I think you're way over time. Let us know, if you don't mind, what you find. Yes, Judge Bregersen, I will. You had some rebuttal time. I think I just heard Mr. Kinnead admit that his client's interests are not being harmed by any particular project and that their concern is really the piecemeal destruction of multiple projects. But, as I explained, the regulations are structured so that this piecemeal harm cannot occur. When the Forest Service consults on — Could you start back at the beginning? Because I can't see you, and so, you know, the communication is not that great. So I don't want to miss what you've had to say. Okay. Well, Mr. Kinnead admitted that his client is not being harmed by any particular project, that their concern is with all of the projects occurring on the landscape. But the ESA regulations are structured to account for all of those projects. In the context of any consultation, whether it be on a plan or on a project, the Fish and Wildlife Service looks at the aggregate impacts of all projects as part of the environmental baseline. Give me that last sentence. You're talking too fast. In the context of any consultation, the Fish and Wildlife Service looks at the aggregate impacts of all Forest Service projects and adds to that the impacts of private and state actions and does so not only in the context of the project or at the project scale, but also at what the plaintiffs would call the landscape scale, the critical habitat unit. Why don't they just do that without a lawsuit? Well, they do do that, Your Honor, through the project-level consultation, any consultation. How many times do they meet with Fish and Wildlife? Well, there's one consultation for each agency action. Yes, there's one, but things are changing. So why don't they have another one? I mean, what's the harm in one government agency respecting another and talking to another? The Forest Service does consult with the Fish and Wildlife Service before it takes any action. I heard that. You told me that. But why can't they do it now? They are doing it through project consultation. I mean, are they getting together with the Fish and Wildlife now as we speak? Aren't you telling me? To the extent the – what I'm saying is to the extent – You can tell me yes or no. Well, I'm not sure on what they would be consulting, so I can't answer with a yes or no. Well, you've got a lawsuit out there brought by responsible people who are concerned about the endangered species of the lynx. This lawsuit's been going on for a while, and you would think that maybe the Forest Service would get together. You know, we're all public service, right? Service, at least we're supposed to be, and sit down with Fish and Wildlife and start consulting again because one service is interested in one area and the other service is interested in something different. They've got to be brought together sometime. So I don't know what the big problem is, why they can't talk to one another. That's the problem with the whole country today. They have talked to each other. To the extent that the Forest Service takes any action, it is consulting. And the statutory trigger is not discretionary. Have they consulted with Fish and Wildlife during the past year? With respect to what action? Yes, on many actions. The lynx. And they are an endangered species, and they are a threatened species. To the extent the Forest Service takes any action that may affect the lynx, yes, it does consult with the Fish and Wildlife Service. So did they do it within the past year? I cannot say because it would have... Well, then why don't you just tell me? You can't say. Well, because it would have... Okay, Your Honor, I cannot say. Well, that's all you've got to do. Otherwise, you'd just be effortlessly alone. I apologize, Your Honor. I mean, you know, we've got to learn to talk straight once in a while, don't we? I was... And there's all this smoke screen showing up all the time. It's very frustrating. I apologize, Your Honor. The statutory trigger is not discretion, as counsel states, but it is action. It is affirmative action. And to the extent the Forest Service takes any action, it consults. Now, quickly turning to the cross-appeal, the district court did not abuse its discretion in declining to enjoin projects pending consultation because the plaintiffs failed to show that they would be irreparably harmed or harmed, let alone irreparably harmed, by any site-specific project. And, again, I think plaintiff's counsel has admitted here. Contrary to their argument, irreparable harm cannot be presumed in the ESA context or any context unless Congress specifically says so. And it has not done so in the ESA. The plaintiffs must show that there is a likelihood that they would suffer irreparable harm, as the Supreme Court has... Well, I mean, they're an endangered species, aren't they? So you're telling me there's no likelihood of irreparable harm? No, and, in fact, that is the conclusion of the Fish and Wildlife Service in the consultations. The Fish and Wildlife Service determined that the Forest Service projects are not likely to adversely affect critical habitat. And now for the... How long ago was that made? That was during the context of the project consultation, which I believe occurred somewhere around 2011, 2012, somewhere around there. With respect to the plaintiff's arguments that they make for the first time in their reply brief that they have, in fact, showed irreparable harm, those arguments are unavailing. First, courts don't consider arguments made for the first time on appeal, let alone in reply briefs. Plaintiffs did not make that argument in the district court. They relied entirely on their presumption of irreparable harm theory. Secondly, the district court... It strikes me, though, in the context of this statute that we're dealing with, that it wouldn't take much, as Judge Pregerson was pointing out, to show irreparable harm when you're dealing with endangered species. Well, it's also not harm to the species that's relevant. It's harm to the plaintiffs. Yes, but, I mean, but you're dealing... But their harm is that they won't be, you know, is that this species is threatened, it's endangered, and they won't be able to enjoy these species, you know, unless adequate protection is provided. And that's probably a reason... And that doesn't strike me as it was required much of a showing, assuming that they prevail on the merits. And that's maybe a reason why a presumption isn't needed here. And that's why irreparable harm isn't presumed. Now, they may not have made that argument to the district court, but I don't see why they couldn't. You can always apply for an injunction at any time. A little louder, please. They may not have made that in... They may not have made that argument or made a showing to that extent below, but they could do... You know, the case... This lawsuit is available. It's on... They can go back and do it again. Well, to the extent the district court has jurisdiction, sure. And unless the Court has any other questions... No, I don't. Thank you. Judge Ferguson, do you have any other questions? Not now. Okay. Thank you, counsel. We appreciate your arguments on this interesting case. And we will submit the matter now at this time. And thank you all. And that will end our session for today. Thank you.
judges: PREGERSON, PAEZ, WATFORD